In the Matter of the Probate of the Will of WALTER C. MACOMBER, Deceased.

DELLA W. MACOMBER, Respondent; MARTIN E. ANGELINO, as Administrator of the Estate of MABEL BRONSON, Deceased, Appellant.

Third Department, March 9, 1949.

*Coville, Nemeti & Zeller,* for respondent.

*Martin E. Angelino,* for appellant.

BERGAN, J. With due formality, the testator executed his will on July 25, 1910. It was on a printed form and the directions for disposition of property were in the decedent's handwriting. When the will was found, large diagonal lines appeared over the written text extending through more than half of it; and written diagonally through the text were the words in the testator's handwriting: '' See codicile ''. In the left margin

of the written text the words " See codicile " also appeared. It is conceded the marks and the notations were made by the testator.

With the will was found an instrument, also in testator's handwriting, dated October 17, 1946, entitled " Codicile to my will " signed by testator, making other dispositions of his property. The codicil was not executed with the formality required by law.

The Surrogate has rejected the argument of the contestant that there was such a revocation of the will of July 25, 1910, as to result in intestacy; and applying the doctrine of dependent relative revocation, has granted a motion for judgment on the pleadings and has admitted the will to probate.

It is conceded by appellant that the issues raised by the objections to probate are to be determined from the documents before the court and appellant asks that this court on the record that is here reverse the order of the Surrogate and grant a decree denying probate. The procedure followed by the Surrogate in granting judgment on the pleadings, therefore, is not questioned here.

The question is presented, more precisely perhaps than in any reported New York case, whether the English doctrine of dependent relative revocation is admissible in New York, either as a firm rule of evaluation of intent or as a principle in aid of ascertaining intent in the revocation of a will.

The doctrine may be simply stated by saying that where the intention to revoke is conditional and where the condition is not fulfilled, the revocation is not effective. It is usually applied where the testator cancels a will with a present intention to make a new testamentary disposition, and the new disposition is not made, or if made, fails of effect for some reason. (See discussion in 68 C. J., Wills, § 483, where the American and English cases in which it has been applied are collated.)

Drawing from his wide experience in probate law, Surrogate Foley reached the conclusion in 1940, in *Matter of McCaffrey* (174 Misc. 162) that the doctrine is inadmissible under the New York statute and decisions, and at the end of an exhaustive analysis said bluntly that " The history of our statutes, the decisions and our public policy exclude the existence of the doctrine of dependent relative revocation as a rule of law in this State." (P. 173.)

He had before him for decision a case where the testator had made a valid will, succeeded by a second valid will revoking the first one. By vertical and diagonal lines substantial parts

of the second will were stricken out as well as the signatures of the testator and witnesses and the attestation clause. A notation was signed by testator at the bottom to the effect the will was cancelled that the earlier will "may now be restored in full force and effect." (P. 164.) The decision was that the revocation was not dependent upon restoration of the earlier will and the decree was for intestacy.

Except in Judge FOLEY's case and in *Matter of Field* (194 Misc. 47), which followed it, the doctrine seems never to have been disavowed in New York, and it has been treated in the dicta of judges with a very considerable deference. In *Ely* v. *Megie* (219 N. Y. 112) the doctrine was discussed by HOGAN, J. (pp. 138–139) and he indicated that it was not applied there because the facts before the court did not come within the rule. In *Matter of Tremain* (282 N. Y. 485) where it was held that the acts of the testatrix were not sufficient to effect a revocation within section 34 of the Decedent Estate Law, collateral reference is made to the doctrine in the opinion of LEWIS, J. (P. 491.) See, also, discussion in *Matter of Tousey* (34 Misc. 363).

In *Matter of Raisbeck* (52 Misc. 279) the Surrogate expressly applied the doctrine (p. 283). There the testator, a lawyer, had duly executed a will and had made a number of alterations, including marks over the signatures. It was held that these had reference to a draft of a proposed new will, which had been contemplated but not drawn, and therefore were equivocal and relative; and that under the doctrine of dependent relative revocation, the will was deemed not revoked and was admitted to probate.

Very early it was held in New York the mere act of canceling alone is without significance unless an intent to revoke accompanies the act; and when corrections are ineffectual for lack of formality required by law, an intent to destroy the previous devise will not be found. (*Jackson* v. *Holloway*, 7 Johns. 394 [1811].) This was followed in principle in *McPherson* v. *Clark* (3 Bradf. 92, 98).

In *Sanderson* v. *Norcross* (242 Mass. 43) upon which the Surrogate in *Matter of McCaffrey* (*supra*) strongly relied, the Supreme Judicial Court undertook for the first time to consider the doctrine directly and was of opinion that its previous implicit recognition in Massachusetts and its general recognition elsewhere required its treatment "as part of our law without further discussion." (P. 45.) The New York case cited was *Jackson* v. *Holloway* (*supra*).

Still the doctrine was considered one that should be applied with caution and it was felt that where the statute of the commonwealth furnished a clear guide it should be followed. There the testator had executed a valid will. The signature was scratched out and lines were drawn through the names of the witnesses and through two bequeathing paragraphs in the body of the instrument. In the margin the words " This will is void as I have made a later one " appeared in the writing of and signed by the testator. In the safe with the will was found an undated memorandum containing some provisions identical with the original will and some different provisions. It was not signed or executed.

It was held there had been a cancellation which was clear and unmistakable and that since the sequence of events in reference to the acts of cancellation and memorandum was left in doubt, intention itself depended wholly upon speculation and conjecture and the course indicated was to treat the will as cancelled under the language of the statute and the revocation as unequivocal (pp. 46, 47).

Here the acts of the testator in the direction of cancellation were relative to another disposition of his property which was abortive. He himself related his marks of cancellation to the " codicile " to which he made two distinct references. The reference, at least, is not open to doubt, and there is no difficulty in treating his acts as equivocal.

The doctrine of dependent relative revocation is functionally a rule of interpretation of intention. It has behind it a general acceptance in the English cases and a rather wide and respectful acceptance in principle in the United States. The rule seeks to avoid intestacy where a will has once been duly executed and the acts of the testator in relation to its revocation seem conditional or equivocal.

It is very often acutely difficult to gain an insight into the intent of a deceased and the pragmatic assumption has been made that revocation related to other testamentary disposition which fails is tentative, and if it did not succeed the testator would have left his previous disposition alone.

It can be argued that this carried interpretation very far, but many judges have found the rule a safe enough guide, and at least as good an argument can be made for it, in equivocal circumstances, as for intestacy.

No doubt it has reasonable limitations as the court noted in the *Norcross* case (*supra*). " We should hesitate to indorse many of the decisions in which it has been invoked." (P. 45.)

But the facts here fit well within the classic pattern of the rule in its most reliable aspect, and it ought to be applied to the facts of this case.

If the statute is read as the sole guide, it would indicate the same result. The cancellation or obliteration of a will by the testator himself must be with an intent to revoke (Decedent Estate Law, § 34). The conditional nature of the cancellation here negatives an intent to revoke, dependent as it is on other and unfulfilled conditions.

The order granting judgment on the pleadings and decreeing the admission of the will to probate should be affirmed, with costs.

FOSTER, P. J., HEFFERNAN, DEYO and SANTRY, JJ., concur.

Order granting judgment on the pleadings and decreeing the admission of the will to probate affirmed, with costs to both parties, payable from the estate.